## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**LEVELLE D. TERRY,**

**Plaintiff,**

**v.**                                                    **Civil Action No. 3:22cv774**

**LIEUTENANT JARRELL,** *et al.,*

**Defendants.**

## MEMORANDUM OPINION

Levelle D. Terry, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action

against Lieutenant Jarrell, Deputy Copeland, and Deputy Sharpe (collectively, the"Defendants"),

in which he complains about an incident that occurred while he was a pretrial detainee at the

Henrico County Jail (the "HCJ").[1]  In his Amended Complaint (the "Complaint"), (ECF No. 6),

Terry raises the following claim for relief:[2]

> Claim One:   Defendants applied excessive force to Terry, breaking his finger and
> injuring his face, while attempting to transfer him from a holding cell in
> violation of the Fourteenth Amendment.[3]  (ECF No. 6, at 4–5.)

---

[1] 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects,
> or causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system to the
parties' submissions.  The Court corrects the spelling, punctuation, and capitalization and omits
the emphasis in quotations from the parties' submissions, unless otherwise noted.

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process
of law . . . ." U.S. Const. amend. XIV, § 1.

Defendants have filed a Motion for Summary Judgment.  (ECF No. 24.)  Terry has responded.  (ECF Nos. 31, 35.)  For the reasons stated below, the Defendants' Motion for Summary Judgment will be GRANTED.  (ECF No. 24.)

## I. Summary Judgment Standard

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted).  When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).  In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  However, a mere "*scintilla* of evidence" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).  "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.*

(quoting *Munson*, 81 U.S. at 448).  Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of their Motion for Summary Judgment, the Defendants submit:  (1) the Declaration of Captain Ralph Jarrell (the "Jarrell Declaration"), (ECF No. 25–1); (2) the Declaration of Sergeant Thomas Sharpe (the "Sharpe Declaration"), (ECF No. 25–2); the Declaration of Investigator Daiquan Copeland (the "Copeland Declaration"), (ECF No. 25–3); and, (4) the Declaration of Lieutenant Gretchen Jenkins (the "Jenkins Declaration"), (ECF No. 25–4), as well as various exhibits and attachments, which the Court will refer to, as necessary, by their respective CM/ECF designations.

At this stage, the Court is tasked with assessing whether Terry "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added).  The facts offered by an affidavit or sworn declaration must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4).  In this regard, the sworn statement "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.*  Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted).

Terry has filed two documents, which the Court construes as being submitted in response to the Motion for Summary Judgment.  (ECF Nos. 31, 35.)  However, as discussed below, neither of Terry's submissions constitute admissible evidence.

Terry's first submission, (ECF No. 31), is sworn to under penalty of perjury. Nevertheless, it states no facts, and contains nothing more than legal standards and Terry's own conclusions, which do not constitute admissible evidence and are of no value in assessing the propriety of summary judgment. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (internal quotation marks omitted) (citations omitted) ("[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment"). Terry's second submission is a letter addressed to the clerk, in which he complains generally about the Defendants' treatment of him and the "pain and suffering" that he maintains he has endured as a result. (ECF No. 35, at 1–2.) However, this document fails to constitute admissible evidence because Terry failed to swear to its contents under penalty of perjury. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004). Terry's failure to cite to any admissible evidence to counter the Motion for Summary Judgment permits the Court to rely solely on the evidence cited by the Defendants in deciding the issue of summary judgment. *Forsyth*, 19 F.3d at 1537; Fed. R. Civ. P. 56(c)(3).

In light of the foregoing, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Terry.

## II. Undisputed Facts

On November 12, 2020, Terry was assigned to a cell in the booking area of the HCJ for observation because staff suspected that he had swallowed contraband. (Jarrell Decl. ¶ 3.) On November 16, 2020, Defendant Jarrell was instructed by his supervisor to conduct a body scan of Terry, and, if no contraband was evident, to move Terry to general population. (Jarrell Decl. ¶ 3.) Defendant Jarrell instructed Defendant Sharpe to search Terry's cell while he and other officers attempted to complete the body scan of Terry. (Jarrell Decl. ¶ 3.)

4

Defendant Sharpe searched Terry's cell and "recovered a piece of broken mirror, concealed inside a toilet paper tube and hidden underneath Inmate Terry's mattress. The corners of the broken piece of mirror were sharp, such that it could have been used as [a] weapon." (Sharpe Decl. ¶ 3.) Based on this discovery, Terry "could no longer be moved back to the general population because he would be facing a new disciplinary charge." (Jarrell Decl. ¶ 3.) Therefore, the decision was made to place him in another cell in the booking area. (Jarrell Decl. ¶ 3.)

Defendant Jarrell instructed several officers, including Defendant Copeland, to escort Terry to a new cell in the booking area. (Jarrell Decl. ¶ 4.) Terry initially "complied with the officers' instructions . . . but, upon learning that he was not returning to the general population, Inmate Terry ceased following officer instructions." (Jarrell Decl. ¶ 4.) Terry, "who was not restrained at the time, began to argue with the officers, pulled back from them, and assumed a fighting stance, stating that he would not go into his newly assigned cell." (Jarrell Decl. ¶ 4.) Defendant Jarrell attempted to explain the situation to Terry, and issued verbal commands to Terry, which were not followed. (Copeland Decl. ¶¶ 4–5.) At the time, Terry was in the middle of the booking area, which was a "busy and sensitive area of the jail." (Jarrell Decl. ¶ 4.) "Terry's refusal [to follow instructions] threatened the operational safety and security of any inmates and jail staff needing to move through the area." (Jarrell Decl. ¶ 4.)

Defendant Copeland and another officer attempted to place Terry in a "law enforcement grasp," which is accomplished by establishing "two points of contact with the inmate's arm, one generally above the elbow and a second with the inmate's hand." (Jarrell Decl. ¶ 5.) Defendant Copeland and the other officer then:

> [S]ecured Inmate Terry's hands behind his back and placed Inmate Terry on the floor, lying on his stomach. Inmate Terry was not "slammed" to the ground. The

officers then secured Inmate Terry's hands using handcuffs and picked him back up, placing him on his feet. Inmate Terry continued to verbally and physically resist officer orders to proceed to his newly assigned holding cell as officers had to physically move him into his new holding cell.

(Jarrell Decl. ¶ 5.) Defendant Copeland "did not bend or twist any of Inmate Terry's fingers," nor did he "witness any other officer bend or twist Inmate Terry's fingers." (Copeland Decl. ¶ 7.) [4] Defendant Copeland "do[es] not recall touching Inmate Terry's fingers, other than potential incidental contact as [he] applied handcuffs" to Terry. (Copeland Decl. ¶ 7.)

During the time Terry was being transported and subsequently restrained, Defendant Sharpe was at the front desk doing paperwork associated with the contraband found in Terry's cell. (Sharpe Decl. ¶ 4.) Defendant Sharpe observed Terry resisting his colleagues, though he "did not place handcuffs on Inmate Terry or otherwise assist in restraining him." (Sharpe Decl. ¶ 7.) Defendant Sharpe has no recollection of "physically touching Inmate Terry at any point during this incident." (Sharpe Decl. ¶ 7.) Defendant Sharpe "did not observe Inmate Terry complaining of any injuries after he was placed in handcuffs to be transported to his cell." (Sharpe Decl. ¶ 6.)

Lieutenant Jenkins interviewed Terry on December 22, 2020. (Jenkins Decl. ¶ 4.) Terry admitted to Lieutenant Jenkins that he "refused instructions to proceed to a different holding cell." (Jenkins Decl. ¶ 5.) Terry further admitted to Lieutenant Jenkins that "he could not see which [officer] touched his fingers or hands because they were all behind him at the time he claims he was injured." (Jenkins Decl. ¶ 5.)

---

[4] In his unverified Complaint, Terry alleges that officers "slammed [him] to the ground." (ECF No. 6, at 4.) Terry maintains that his face bled after "hitting the concrete." (ECF No. 6, at 4.) Terry further alleges that "[a]fter [he] was cuffed," Defendant Copeland bent his finger back and broke it. (ECF No. 6, at 4–5.) Because Terry failed to swear to the contents of his Complaint under penalty of perjury, the allegations contained therein do not constitute admissible evidence. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

### III.  Analysis

#### A.  Legal Standards

In Claim One, Terry alleges that the Defendants used excessive force against him.  (ECF No. 6, at 4–5.)  It is undisputed that Terry was a pretrial detainee at the time of the alleged incident.  (ECF No. 25, at 1; *see also* ECF No. 31, at 1.)  Thus, Terry's claim is governed by the Fourteenth Amendment.  *See Goodman v. Barber*, 539 F. App'x 87, 89 (4th Cir. 2013) (citation omitted).

Under the Fourteenth Amendment standard, a detainee must demonstrate that a defendant "inflicted unnecessary and wanton pain and suffering upon the detainee." *See Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006) (citations omitted) (internal quotation marks omitted), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010).  A detainee may prevail by "providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (citations omitted).[5]

Factors a court may consider to determine whether force was objectively unreasonable may include:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of [the detainee's] injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and whether the [detainee] was actively resisting.

*Id.* at 397 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

---

[5] In *Kingsley*, the Supreme Court determined that the appropriate standard for the Fourteenth Amendment is "only that the officers' use of that force was *objectively* unreasonable," not that "the officers were *subjectively* aware that their use of force was unreasonable . . . ."  576 U.S. at 391.

"[O]fficers facing disturbances 'are often forced to make split-second judgments.'" *Id.* at 399 (citing *Graham*, 490 U.S. at 397). Consequently, courts "must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Id.* (citation omitted) (internal quotation mark omitted). Courts must also recognize that "agents of the state are permitted to exercise a certain degree of force in order to protect the interests of society." *Sawyer v. Asbury*, 537 F. App'x 283, 294 (4th Cir. 2013) (quoting *Justice v. Dennis*, 834 F.2d 380, 382 (4th Cir. 1987), *vacated on other grounds by* 490 U.S. 1087 (1989)). Thus, not every "push or shove, even if it may later seem unnecessary" is serious enough to rise to the level of a constitutional violation. *Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008) (quoting *Graham*, 490 U.S. at 396), *abrogated on other grounds by Wilkins*, 559 U.S. 34.

As such, Courts "must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough.'" *Scarbro v. New Hanover Cty.*, 374 F. App'x 366, 370 (4th Cir. 2010) (quoting *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999)). The determination of whether excessive force was used must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397.

On the record before the Court, Terry has failed to demonstrate that Defendants "inflicted unnecessary and wanton pain and suffering upon [him]." *Carr*, 453 F.3d at 605. To the contrary, the record demonstrates that Terry presented a security risk, and that the application of force was both limited and reasonable under the circumstances.

### B. <u>Defendant Sharpe</u>

As an initial matter, Terry has failed to demonstrate that Defendant Sharpe played any role whatsoever in the use of force against Terry. In a civil rights action, liability is "personal, based upon each defendant's own constitutional violations." *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Thus, a plaintiff must affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *cf. Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (explaining that the "plaintiff must [demonstrate] that each Government–official defendant, through the official's own individual actions, has violated the Constitution").

Here, the uncontroverted evidence demonstrates that Defendant Sharpe was at a desk doing paperwork related to the contraband found in Terry's cell when the use of force in question occurred. (Sharpe Decl. ¶ 4.) Defendant Sharpe "did not place handcuffs on Inmate Terry or otherwise assist in restraining him." (Sharpe Decl. ¶ 7.) Consequently, Terry has failed to show that Defendant Sharpe personally participated in the alleged deprivation of Terry's rights. *See Trulock*, 275 F.3d at 402; *Vinnedge*, 550 F.2d at 928. Accordingly, Claim One will be DISMISSED as to Defendant Sharpe.

### C. <u>Defendants Jarrell and Copeland</u>

The first *Kingsley* factor requires the Court to examine "the relationship between the need for the use of force and the amount of force used." 576 U.S. at 397. Terry was in a special cell in the booking area for observation because officers suspected that he had swallowed contraband. (Jarrell Decl. ¶ 3.) A weapon was found in that cell immediately prior to the incident in question. (Sharpe Decl. ¶ 3.) Despite that fact, officers walked Terry unrestrained through a "busy and sensitive" section of the booking area. (Jarrell Decl. ¶ 4.) At that point, Terry "began

to argue with the officers, pulled back from them, and assumed a fighting stance, stating that he would not go into his newly assigned cell." (Jarrell Decl. ¶ 4.) Given these circumstances, the "need for the use of force" was obvious and immediate. *Kingsley*, 576 U.S. at 397.

Further, the amount of force that officers applied was necessary when considered in light of the security risk that Terry posed. Defendant Copeland and another officer placed Terry in a "law enforcement grasp," secured his hands behind his back, and placed him on the ground, where they handcuffed him, before picking him up and placing him on his feet. (Jarrell Decl. ¶ 5.) In restraining Terry, Defendant Copeland "did not bend or twist any of Inmate Terry's fingers," nor did he "witness any other officer bend or twist Inmate Terry's fingers." (Copeland Decl. ¶ 7.) Defendant Copeland "do[es] not recall touching Inmate Terry's fingers, other than potential incidental contact as [he] applied handcuffs" to Terry. (Copeland Decl. ¶ 7.)

In this instance, the "need for the use of force" was great, and the "amount of force used" was necessary, proportionate, and appropriate in light of the circumstances. *Kingsley*, 576 U.S. at 397. Defendants applied only the minimal amount of force necessary to restrain an unruly and combative detainee who was unrestrained and openly defying instructions in a "busy and sensitive" area of the jail, and, who had, only moments earlier, possessed a weapon. In this instance, the first *Kingsley* factor clearly cuts against Terry's claim.

The second *Kingsley* factor requires the Court to examine "the extent of [the detainee's] injury." 576 U.S. at 397. In his unverified Complaint, Terry alleges that he suffered injuries to his face and a broken finger. (ECF No. 6, at 4–5.) These unsworn statements do not constitute admissible evidence. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004). Moreover, on this record, any injuries Terry did suffer could readily be attributed to his own combative behavior and acts of resistance, as opposed to anything the Defendants may have done. Indeed,

even after he was handcuffed, Terry continued to physically and verbally resist officers and he had to be physically moved to his new cell. (Jarrell Decl. ¶ 5.) Consequently, this inquiry too counsels in favor of denying Terry's claim. *Kingsley*, 576 U.S. at 397.

The third *Kingsley* factor requires the court to consider "any effort made by the officer to temper or to limit the amount of force." 576 U.S. at 397. The record indicates that before any force was applied, Defendant Jarrell attempted to explain the situation to Terry, and issued verbal commands to Terry, which were not followed. (Copeland Decl. ¶¶ 4–5.) Terry admitted to Lieutenant Jenkins that he refused these commands. (Jenkins Decl. ¶ 5.) Further, when force was ultimately applied, Defendant Copeland did not hit or strike Terry, rather, he and another officer applied a "law enforcement grasp," secured Terry's hands behind his back, and lowered him to the ground, where he was handcuffed, despite the fact that Terry continued to resist. (Copeland Decl. ¶ 6.) In this instance, the Defendants showed restraint, attempted to deescalate the situation through verbal commands, and applied proportionate and appropriate techniques to attempt to end the situation without violence. Terry simply did not cooperate and escalated the situation. As such, the third *Kingsley* factor suggests the denial of Terry's claim.

The Court is next required to consider "the severity of the security problem at issue." 576 U.S. at 397. In this instance, the severity of the security risk that Terry presented cannot be understated. Terry had just been found to be in possession of a weapon. Given his aggressive behavior, it would have been reasonable for an officer on the scene to consider the possibility that he might possess another. Further, Terry was unrestrained in a "busy and sensitive" area of the jail when he openly and flagrantly decided to disregard orders and physically challenge the officers. This was clearly a "dynamic and potentially violent situation," and the Court "must accord due deference to [the Defendant's] efforts to restrain [Terry]," less the Court be seen as

giving "encouragement to insubordination in an environment which is already volatile enough." *Scarbro*, 374 F. App'x at 370 (internal quotation marks omitted) (quoting *Peed*, 195 F.3d at 696). Consequently, the fourth *Kingsley* factor also counsels against Terry's claim.

Similarly, the fifth *Kingsley* factor, which requires the Court to examine "the threat reasonably perceived by the officer," 576 U.S. at 397, also cuts against Terry's claim. As discussed above, Terry represented a significant security concern. He had recently possessed a weapon, and any officer on the scene could have reasonably suspected that he may possess another, given his aggressive behavior and flagrant disregard for the officer's verbal directives. Any officer in the Defendants' position would have reasonably perceived a risk to their personal safety.

The sixth and final *Kingsley* factor requires the Court to evaluate "whether the [detainee] was actively resisting." 576 U.S. at 397. As discussed above, Terry actively resisted throughout the encounter with the Defendants. He disregarded verbal commands and attempts to deescalate the situation, openly challenged officers, took a fighting stance, and even after he was restrained, continued to physically and verbally resist until he was physically placed in his new cell. Clearly, this factor guides the Court to deny Terry's claim.

Overall, the uncontroverted evidence establishes that Defendants Jerrell and Copeland did not apply excessive force to Terry. Rather, their actions were rationally related to legitimate government objectives, protecting their safety, and maintaining order in the HCJ, and were not excessive for those purposes. *Kingsley*, 576 U.S. at 398. Accordingly, Claim One will be DISMISSED as to Defendants Jerrell and Copeland.

**D.  Terry's Request for Summary Judgment in his Favor**

Finally, the Court notes that in his first response to the Defendants' Motion for Summary

Judgment, Terry requests that the Court grant summary judgment in his favor.  (ECF No. 31, at

3.)  For the reasons stated above, that request will be DENIED.

## IV.  Conclusion

For the reasons stated above, the Motion for Summary Judgment will be GRANTED.

(ECF No. 24.)  Claim One will be DISMISSED.  Terry's request for summary judgment in his

favor will be DENIED.  (ECF No. 31.)   The action will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.


Date:  3-21-2023
Richmond, Virginia

_____/s/_____
M. Hannah Lauck
United States District Judge

13